USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WILFREDO SEPULVEDA,

              Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY

              Defendant.
------------------------------------------------------------------------X

12 Civ. 4301 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

*Pro se* Plaintiff Wilfredo Sepulveda brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), Title 42, United States Code, Section 405(g), challenging a final decision of the Commissioner of Social Security (the "Commissioner") finding him ineligible for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") as of January 26, 2011. The Commissioner has moved, unopposed, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 16). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is GRANTED.

## BACKGROUND

The following facts are taken from the administrative record. The record consists of, among other things, Plaintiff's testimony at an administrative hearing, opinions of various consultative examiners, and hospital records from a July 2010 accident, described below. Plaintiff did not provide any records from regularly treating doctors.

Plaintiff was born in 1977, lives by himself, and completed high school as well as two semesters of college. (Transcript of the Administrative Record ("Tr.") 30, 70, 162). Plaintiff worked as a porter in an office building from 1997 until 2002, and again for a period of eight

months in 2009 and 2010.  (*Id.* 30-31, 93-95).  He was laid off in June 2010.  (*Id.* 31).

In February of 2009, Plaintiff underwent a series of physical and psychological evaluations at the request of the New York State Division of Disability Determinations.  (*Id.* 160-72).  At the physical examination, conducted by Dr. Aurelio Salon, Plaintiff complained of depression and anxiety, as well as "low back and neck pain" as a result of a 2003 automobile accident.  (*Id.* 166).  Dr. Salon found "mild degenerative spondylosis at L3-L4" of Plaintiff's lumbosacral spine (*id.* 172), but otherwise found no abnormalities in the spine and concluded that there were "no objective findings to support the fact that [Plaintiff] would be restricted in his ability to sit or stand or . . . climb, push, pull, or carry heavy objects."  (*Id.* 167-69).

At the psychological examination conducted by Dr. Heidi Van Horne, Plaintiff reported that he experienced difficulty sleeping, panic attacks, depression, and anxiety.  (*Id.* 162-63).  Dr. Van Horne also reported that Plaintiff stated that "when he gets really depressed he drinks a lot of liquor," and that "since fourteen years of age he has been smoking marijuana approximately three times per week."  (*Id.* 163).  Dr. Van Horne diagnosed Plaintiff with dysthmic disorder, alcohol abuse, and cannabis abuse.  (*Id.* 165).  Nevertheless, Dr. Van Horne noted that Plaintiff's demeanor was cooperative, his appearance was appropriate, his speech was fluent, and his thought processes were coherent.  (*Id.* 163-64).  Dr. Van Horne concluded that Plaintiff's psychological problems were not "significant enough to interfere with [his] ability to function on a daily basis."  (*Id.* 164).

In July 2010, Plaintiff sustained injuries after either jumping or falling from a second floor fire escape during a "family crisis."  (*Id.* 25-28).  Plaintiff had been "going through something with [his] girlfriend," and someone allegedly "slipped something in [his] drink."  (*Id.* 27).  After family members "didn't want to let [him] out of the house," he "jumped out through

2

the fire escape." (*Id.* 27). Plaintiff testified that he was "smoking weed, and somebody had slipped some angel dust in [his] weed" on the night of the dispute. (*Id.* 28).

Following the fall, Plaintiff was hospitalized for almost two weeks at Montefiore Medical Center ("Montefiore"), and underwent surgery to repair a compression fracture of the L1 and L2 vertebrae. (*Id.* 26, 346-51). He had also suffered a fracture of the right calcaneus (heel), but did not undergo surgery for this condition, and instead was advised to wear a cam walker boot. (*Id.* 27, 303, 309). At Montefiore, Plaintiff related that, prior to the fall, he had been upset because he had broken up with his girlfriend and mother of his child and lost his job as a maintenance worker. (*Id.* 256). He was transferred from Montefiore to Mt. Sinai Hospital on August 9, 2010 for rehabilitation (*id.* 254); transferred back to Montefiore on August 13, 2010 for wound drainage (*id.* 207); and ultimately discharged to Mt. Sinai for rehabilitation on August 16, 2010 (*id.*).

On December 19, 2008, Plaintiff filed applications for DIB and SSI, alleging that he was disabled as of August 15, 2003. (*Id.* 11). Following the Commissioner's denial of Plaintiff's application on initial review, Plaintiff requested an administrative hearing. (*Id.* 40-42, 46-47). On January 3, 2011, Administrative Law Judge ("ALJ") Michael Friedman conducted a hearing, which Plaintiff attended *pro se*, although he had been advised of his right to representation and provided with a list of potential representatives. (*Id.* 8-19, 49, 51-55). After reviewing the case *de novo*, the ALJ found that Plaintiff was not disabled under the Act (*id.* 11-19), which became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 11, 2012. (*Id.* 1-3). *See Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (per curiam).

Plaintiff brought this action *pro se* on May 31, 2012, and the Commissioner moved for

3

judgment on the pleadings on February 4, 2013. (Docket No. 16). Plaintiff's time to oppose the motion expired without response; the Court therefore considers the motion to be unopposed.

## DISCUSSION

### A. Applicable Law

A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). That is, "[t]o survive a Rule 12(c) motion [for judgment on the pleadings], the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* (internal quotation marks omitted). Even where such a motion stands unopposed, "the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law." *Vt. Teddy Bear Co. v. 1–800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (applying this standard in the context of summary judgment); *see also Wellington v. Astrue*, No. 12 Civ. 3523 (KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013); *Martell v. Astrue*, No. 09 Civ. 1701 (NRB), 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010). When a plaintiff proceeds *pro se*, as in this case, the Court is "obligated to construe [his] complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

To qualify for disability benefits under 42 U.S.C. § 423(d)(1)(A), a plaintiff must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (internal quotation marks omitted). The Act also provides that the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

4

exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner follows a five-step process to determine whether a claimant is entitled to disability benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920. The Second Circuit has described the process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

*Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court may set aside the Commissioner's determination that a claimant is not disabled, however, "only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)) (internal quotations marks omitted). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It

means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id*. at 447-48 (internal quotation marks omitted). It is a "very deferential standard of review — even more so than the 'clearly erroneous' standard." *Id.* at 448 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

**B. Analysis**

Applying these standards here, there is no basis to overturn the Commissioner's decision. First, the ALJ applied the correct legal standard in determining that Plaintiff was not disabled by adhering to the five-step evaluation procedure outlined in the regulations. *See, e.g.*, *Gillespie v. Astrue*, No. 09 Civ. 2198 (ADS), 2012 WL 3646820, at *10 (E.D.N.Y. Aug. 23, 2012); 20 C.F.R. §§ 404.1520 & 416.920. The ALJ found that Plaintiff met the insured-status requirements of the Act through September 30, 2003, and that he had not engaged in substantial gainful activity since August 15, 2003, the alleged disability onset date. (Tr. 13). Next, the ALJ determined that Plaintiff's cracked vertebrae, right heel injury, dysthmic disorder, and history of substance abuse constituted severe impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (*Id.*). Third, the ALJ decided that Plaintiff's impairments did not meet or medically equal the impairments listed in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations. (*Id.*). Before proceeding to step four, the ALJ evaluated Plaintiff's residual functional capacity, and found that Plaintiff was able to perform sedentary work limited to low-stress, simple jobs in an area free of smoke, dust, and other respiratory irritants. (*Id.* 15-18).[1] At the fourth step in the analysis, the ALJ found that Plaintiff was unable to perform his

---

[1] "Sedentary work" is defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

past relevant work as both a porter and maintenance worker, as these jobs required a "medium to heavy exertion level." (*Id.* 18).

At the fifth step in the analysis, the ALJ relied upon the medical vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework for his determination. He noted that Plaintiff was twenty-five years old on the alleged disability onset date, that he had more than a high school education, and that he was able to communicate in English. (*Id.*). The ALJ concluded that Plaintiff's residual functional capacity, in combination with his age, education, and previous work experience, rendered him able to perform jobs that exist in significant numbers in the national economy. (*Id.* 18-19). As such, the ALJ concluded that Plaintiff was not disabled under the Act.

The ALJ's decision is also supported by substantial evidence in the record. In reaching his determination that Plaintiff was not disabled, the ALJ relied on, among other things, Plaintiff's testimony, the findings of Drs. Salon and Van Horne, and the medical records from Montefiore following the July 2010 incident.

As for any physical disabilities, the ALJ properly relied on the examination performed by Dr. Salon, who found that, at least prior to his fall, Plaintiff had no difficulty walking, possessed a level of strength of 5/5 in his upper and lower extremities, and had no restrictions in his ability to sit, stand, climb, push, pull, or carry heavy objects. (*Id.* 169). In addition, the record indicates that Plaintiff was able to work as a porter up until June 2010, long after the alleged onset of disability. (*Id.* 31). Plaintiff's physical abilities certainly diminished after his fall from the fire escape, but he testified at the hearing — which took place five months after the fall — that he could walk up to five city blocks without stopping (*id.* 34), that he could sit continuously for two hours and stand for one-half hour (*id.* 34-35), and that medication relieved his pain (*id.* 32). He

was also not receiving any medical treatment at the time. (*Id.*). The ALJ's finding that Plaintiff's physical impairments did not render him disabled under the Act is thus supported by substantial evidence in the record.

The ALJ's determination that Plaintiff's mental disabilities did not preclude him from performing sedentary work was also supported by substantial evidence. As noted above, Dr. Van Horne opined in 2009 that Plaintiff could "follow and understand simple directions," "maintain attention and concentration and maintain a regular schedule," and "perform complex tasks independently." (*Id.* 164). She concluded that his mental conditions did "not appear to be significant enough to interfere with [his] ability to function on a day-to-day basis." (*Id.*). After the fall, doctors at Montefiore evaluated Plaintiff's mental condition and concluded that he did not show signs of psychosis or suicidality. (*Id.* 283, 312). In addition, he declined a referral for substance-abuse treatment after he was released from Montefiore. Finally, Plaintiff stated at the hearing that he was not abusing drugs or receiving any substance abuse treatment and that he was able to enjoy activities such as watching television and reading books. (*Id.* 28-29, 35-36, 258). Thus, each of the ALJ's findings is supported by substantial evidence.

## CONCLUSION

The Court has reviewed the entirety of the record and concludes that the ALJ's decision was free from legal error and is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to terminate the motion (Docket No. 16) and to close the case.

SO ORDERED.

Dated: December 16, 2013
      New York, New York

                                                JESSE M. FURMAN
                                                United States District Judge